**3**

# AGREEMENT

### Between

## BARRY COUNTY BOARD OF COMMISSIONERS
## and SHERIFF OF BARRY COUNTY

-and-

## TEAMSTERS LOCAL 214
## FOR DEPUTY SHERIFF UNIT

January 1, 1999 through December 31, 2002

# TABLE OF CONTENTS

| ARTICLE | PAGE | SPECIFIC TOPICS |
|---|---|---|
| I | 1 | Recognition |
| II | 1 | Agency Security |
| III | 2 | Union Dues, Initiation Fees or Services Charges |
| IV | 3 | Rights of the Board and the Sheriff |
| V | 3 | Salaries |
| VI | 3 | Grievance Procedures |
| VII | 6 | Discharge and Discipline |
| VIII | 8 | Hours of Work and Overtime |
| IX | 9 | Seniority |
| X | 11 | Layoffs |
| XI | 12 | Work by Non-Bargaining Unit Employees |
| XII | 12 | Leaves of Absence |
| XIII | 14 | Sick Pay |
| XIV | 16 | Vacations |
| XV | 17 | Holidays |
| XVI | 18 | Workers' Compensation Insurance |
| XVII | 19 | Longevity Pay |
| XVIII | 19 | Hospital - Medical Insurance |
| XIX | 21 | Life Insurance |
| XX | 21 | Paid Disability Insurance |
| XXI | 22 | Miscellaneous |
| XXII | 24 | Pension |
| XXIII | 24 | Strikes and Illegal Activity |
| XXIV | 25 | Severability Provision |
| XXV | 25 | Union Business |
| XXVI | 25 | Mileage for Official Use of Personal Cars |
| XXVII | 25 | Safety and Equipment |
| XXVIII | 26 | Uniform Allowance |
| XXIX | 26 | Gun Allowance |
| XXX | 27 | Union Stewards |
| XXXI | 28 | Waiver |
| XXXII | 28 | Duration, Termination and Modification of this Agreement |
| | 29 | Appendix A - Deputy Sheriffs' Hourly Salaries |

## AGREEMENT

This Agreement made and entered into this _____ day of _____, 2000,

by and between the Barry County Board of Commissioners and the Sheriff of Barry

County, hereinafter called "Employer," and Teamsters Local 214, hereinafter designated

the "Union."

### WITNESSETH:

Pursuant to and in accordance with the applicable provisions of Act 366, Public Acts

of 1947, as amended, the parties hereto have engaged in collective bargaining with respect

to the salaries, hours of work, and other conditions of employment for the employees

occupying, or who may, during the life of this Agreement, occupy, the job classifications set

forth in the Appendices attached hereto, and have agreed as follows:

### ARTICLE I
### RECOGNITION

Section 1. This Agreement shall apply to all full-time employees of the Barry County

Sheriff's Department ("the Department") occupying any of the job classifications set forth in

Appendices attached hereto.

Section 2. The Employer agrees that during the life of this Agreement it will not

recognize any organization other than the Union as the collective bargaining agent for the

employees occupying, or who may, during the life of this Agreement, occupy, any of the job

classifications set forth in the Appendices attached hereto. Nor will the Employer aid,

promote or finance any labor group or organization which purports to engage in collective

bargaining or make any agreement with any such group or organization for the purpose of

undermining the Union.

### ARTICLE II
### AGENCY SECURITY

Section 1. Employees covered by this Agreement at the time it becomes effective

and who are members of the Union at the time shall be required, as a condition of

continued employment, to continue membership in the Union or pay a representation fee to

the Union for the duration of this Agreement.

1

Section 2. Employees covered by this Agreement who are not members of the Union at the time it becomes effective and who have completed their probationary period, shall be required as a condition of continued employment to become members of the Union or to pay a representation fee to the Union commencing thirty (30) days after the effective date of this Agreement, and such condition shall be required for the duration of this Agreement.

Section 3. All new employees entering the bargaining unit after the effective date of this Agreement shall be required as a condition of continuing employment to become members of the Union or to pay a representation fee to the Union for the duration of the Agreement commencing on the thirty-first (31st) day following the beginning of their employment in the unit.

Section 4. Employees shall be deemed to have complied with the terms of this section if they are not more than thirty (30) days in arrears for membership dues or representation fees, respectively.

Section 5. Employees who fail to comply with the provisions set forth above, shall have their employment terminated immediately upon expiration of the above stated time limits and receipt of written notice of that fact from the Union. The Union agrees to hold the Employer harmless for any costs, attorneys' fees and /or damages which may be incurred by and/or assessed against the employer from any suit, claim, or other action arising out of and pursuant to the provisions of this Article.

Section 6. The "representation fee" is that amount of money which is equal to the Union's dues, but does not include any initiation fee or assessment.

ARTICLE III

UNION DUES, INITIATION FEES OR SERVICE CHARGES

Section 1. Payment by Checkoff. During the life of this Agreement and in accordance with the terms of the Form of Authorization of Payroll Deduction of dues or service charge, hereinafter set forth, the Employer agrees to deduct a uniform amount as Union membership dues or service charges from the pay of each employee who executes or has executed the Authorization for Payroll Deduction Form.

Section 2. The Employer shall be required to make dues and fees deductions only as long as it may legally do so. The Union will fully protect indemnify and render the Employer harmless against any liabilities for claims resulting from deduction of dues made in accordance with this Article.

2

## ARTICLE IV

## RIGHTS OF THE BOARD AND THE SHERIFF

Nothing in this Agreement shall be deemed to limit or curtail the Employer in any way in the exercise of the rights, powers, and authority, which the Employer had prior to January 1, 1969, or thereafter, unless and only to the extent that specific provisions of this Agreement curtail or limit such rights, powers, and authority. These rights include, but are not limited to, those provided by statute or law along with the right to direct, hire, promote, transfer, assign and retain employees in positions within the Sheriff's Department. Further, to suspend, demote, discharge to take such other disciplinary action which is necessary to maintain the efficient administration of the Sheriff's Department. It is also agreed that the Sheriff has the right to determine the methods, means and personnel, employees or otherwise, by which the business of the Sheriff's Department shall be conducted and to take whatever action is necessary to carry out the duty and obligation of the County to the taxpayers thereof. The Sheriff shall also have the power to make Rules and Regulations relating to personnel policies, procedures and working conditions not inconsistent with the express terms of this Agreement.

The Union reserves the right to grieve when action taken by the Employer under this section is contrary to the specific limitation of such Employer rights contained in this Agreement.

## ARTICLE V

## SALARIES

Effective dates and the salary schedule set forth in Appendix "A" attached hereto and by this reference is made a part hereof, shall remain in full force and effect.

## ARTICLE VI

## GRIEVANCE PROCEDURES

Section 1. For the purpose of this Agreement, the term "Grievance" means any dispute between the Employer and its employees or the Union regarding the meaning, interpretation or application of the terms and provisions of this Agreement.

Section 2. An employee who believes he/she has a grievance shall informally discuss his/her dispute with his/her immediate supervisor or the Sheriff. In the event the dispute is not satisfactorily settled at this point, it shall become a grievance, and the following procedure shall become effective.

Section 3. First Step. To be processed hereunder, a grievance must be reduced to writing (in triplicate), state the facts upon which it is based, when they occurred, specify the section of the Agreement which has allegedly been violated, be signed by the employee who is filing the grievance, and be presented to the Sheriff's designated representative within ten (10) calendar days after he knew or should have known of the occurrence of the event upon which it is based. The Employer representative shall give a written answer to the aggrieved and/or his Union representative within five (5) calendar days after the receipt of the written grievance. If the answer is mutually satisfactory, the employee and/or his Union representative shall so indicate on the grievance form and sign it with two (2) copies of the grievance thus settled retained by the Union and one (1) by the Employer representative.

Section 4. Second Step. If the grievance has not been settled in the first step and if it is to be appealed to the Sheriff, the grievant shall within five (5) calendar days, submit the matter to the Sheriff who shall give a written answer within five (5) calendar days.

Section 5. Third Step. If the grievance has not been settled satisfactorily in the first and second steps, and if it is to be appealed, it shall be appealed to the Sheriff's Department grievance board within ten (10) calendar days of the Step 2 Answer, composed of the Sheriff (or his representative) and a majority of the Personnel Committee of the Board of Commissioners, who shall schedule a meeting within ten (10) days after receipt of the grievance. The meeting shall take place within 30 calendar days of the receipt of the grievance. The Employer shall give a written answer within ten (10) days after meeting. The Teamsters' Representative, Union Steward, and the County Administrator and/or County Attorney may attend the meeting. If the disposition made by the Grievance Board is still not satisfactory or if the Grievance Board does not take action on it after ten (10) days after the meeting, then the grievance may be submitted within thirty (30) calendar days after such disposition by the Grievance Board, to binding arbitration. If the grievance is not submitted to binding arbitration by written demand to the Employer within the time limits described above, it shall be conclusively settled on the basis of the last answer to the grievance.

If notice of appeal to arbitration is timely given, the parties will assign an arbitrator from the following panel of three (3) arbitrators that have been selected by the parties:

1. Mario Chiesa
2. Mark Glazer

4

3. Dan Kruger

If an Arbitrator becomes permanently incapacitated, or if the case is a termination case and the Arbitrator is not available within 120 calendar days, the parties will substitute a mutually acceptable alternate.

Section 6. The parties agree that the Arbitrator and the arbitration shall be subject to the following:

1.      The Arbitrator shall be empowered to rule only on those grievances which are properly submitted through the grievance procedure.

2.      He shall not add to, detract from, ignore, or change any of the terms of this Agreement.

3.      Back pay shall be limited to the amount of the base wage the employee would have earned less any amount received by him from other employment or unemployment compensation which he is permitted to retain.

4.      It shall be the responsibility of the Arbitrator to render a decision within thirty (30) days of the closing of the case if possible.

5.      The parties agree that the arbitration shall be conducted in accordance with the rules of the American Arbitration Association.

6.      Only one grievance shall be presented to an Arbitrator in any one hearing, unless the parties mutually agree to combine grievances for the same Arbitrator.

7.      The charges of the Arbitrator for his fees and expenses shall be borne equally by the parties.

Section 7. Time limits at any step of the grievance procedure may be extended only but mutual written agreement between all parties involved. In the event the grievant does not appeal a grievance from one step to another within the time limit provided, the grievance will be considered as being settled on the basis of the last answer. Failure of the Employer to respond to a grievance at any stage within the time limits specified, shall be considered a denial of the grievance and it may be processed at the next step.

Section 7. Time limits at any step of the grievance procedure may be extended only by mutual written agreement between all parties involved. In the event the grievant does not appeal a grievance from one step to another within the time limit provided, the grievance will be considered as being settled on the basis of the last answer. Failure of the Employer to respond to a grievance at any stage within the time limits specified, shall be considered a denial of the grievance and it may be processed at the next step.

5

Section 8. An aggrieved person may withdraw further consideration of a grievance at any stage of the procedure.

Section 9. Days referred to in this Article shall be Monday through Friday, excluding Saturdays, Sundays and Holidays.

Section 10. Election of Remedies. When remedies are available for any complaint and/or grievance of an employee through any administrative or statutory scheme or procedure, in addition to the grievance procedure provided under this contract, and the employee elects to utilize the statutory or administrative remedy, the Union and the affected employee shall not process the complaint through any grievance procedure provided for in this contract. If an employee elects to use the grievance procedure provided for in this contract and, subsequently, elects to utilize the statutory or administrative remedies, then the grievance shall be deemed to have been withdrawn and the grievance procedure provided for hereunder shall not be applicable and any relief granted shall be forfeited.

ARTICLE VII

DISCHARGE AND DISCIPLINE

Section 1. The employer may discipline any non-probationary employee as defined under Article IX, Section 7, for just cause.

Section 2. Investigatory Complaints. In the event a complaint is made against an employee which may result in the disciplinary action, the following procedure shall apply:

(a)     If, in the investigation of a complaint, an employee is requested to appear before an Employer representative, the employee shall be fully advised of the nature of the complaint and that the investigation may result in disciplinary action.

(b)     Upon the request of the employee for Union representation, such request shall be granted and the Union shall provide such representation. When such representation has been requested, no questioning shall commence until the Union representative is present.

(c)     Employees shall be required to answer questions relating to performance as an employee to the Sheriff's Department as it relates to the complaint. Refusal to answer such questions may result in disciplinary action, including discharge. If the matter under

investigation is criminal, the employee shall be given the <u>Garrity</u> Warning.

Section 3. If the disciplinary action involves discharge or a disciplinary lay-off, the Employer representative effecting the disciplinary action shall meet with the employee and the employee's steward if the employee requests, or in the steward's absence, another Union representative if one is working. The Union representative shall be given the right to meet with the disciplined employee before the employee leaves the premises.

Section 4. Charges and Specifications. The charges and specifications resulting in such discipline or discharge shall be reduced to writing and copies shall be furnished to the employee against whom the charges are brought and, if the employee wishes, to the Union.

Section 5. Specific Section. Such charges and specifications shall state the specific sections of the rule or regulation, if a violation of a rule or regulation is the basis of the charge, and/or appropriate law or ordinance, if applicable, which the employee is alleged to have violated. Employees may be disciplined for other misconduct or omissions.

Section 6. Past Infractions. In imposing any discipline on a current charge, the Employer will not base its decision upon any prior infractions or departmental rules or regulations which occurred more than twenty-eight (28) months previously unless that prior discipline resulted in disciplinary time off.

Section 7. Suspension Pending Investigation. In the event an employee is suspended pending investigation for any reason and as a result of the investigation is exonerated of the charges causing the suspension, the employee shall be compensated for all back wages lost due to the suspension.

Section 8. If there is to be a grievance concerning such disciplinary action, it shall be in writing and filed at Step Two of the Grievance Procedure no later than the end of the fifth (5th) day following the date of the disciplinary action.

Section 9. If an employee who is disciplined fails to file a grievance within the time specified above, or if, upon the hearing of the grievance, the employee is found to have been properly disciplined, then the discipline shall be absolute as the date of the discipline.

Section 10. If it is found that the employee should not have been disciplined, or that the penalty assessed was too severe, then the employee's grievance shall be settled as shall be determined by the Employer and the Union at the Step Three hearing, and the employee's payroll and personnel records shall be adjusted accordingly. If the employee is

exonerated of the charges causing the suspension, he shall be compensated for all back wages due to the suspension. Such wages shall be based on regular base pay hours and not include overtime.

Section 11. If, at the Step Three hearing, the Employer and the Union are unable to agree upon a disposition of the matter mutually satisfactory to them, the Union may appeal the grievance to arbitration.

Section 12. Days referred to in this Article shall be Monday through Friday, excluding Saturdays, Sundays and Holidays.

## ARTICLE VIII
## HOURS OF WORK AND OVERTIME

Section 1. The work of unit employees shall be scheduled by the Employer to meet the needs of the Department. Schedules shall be posted at least one week in advance. The Employer retains the right to schedule or require reasonable amounts of overtime work (not during vacation periods).

Section 2. The regular, contracted-for work day for full time employees shall consist of eight (8) hours of work for a five (5) day work week, except as may be provided under Section 3. Employees shall be paid for working the hours at the rates hereinafter provided in Appendix "A".

An employee covered by this Agreement who is required by the Sheriff to work time in excess of eight (8) hours per day or ten (10) hours per day depending upon their assigned shift, or eighty (80) hours during a given pay period will receive additional pay at time and one-half his hourly rate for all such hours. This overtime work must be scheduled by the Sheriff, Undersheriff, or the Officer in Command specifically so authorized by the Sheriff, if it is to result in additional compensation; providing, however, that employees shall be paid for all hours of work they are required to remain at work.

Section 3. The Employer reserves the right to establish shift starting and quitting times, including an eight (8) hour and/or ten (10) hour shift or any combination thereof. The Union will be notified one (1) week in advance of general changes in starting and quitting times.

Section 4. An employee scheduled to work in excess of his regular scheduled hours during a given pay period may, with advance notification, at the option of the Sheriff or his designee, be given compensation time for such time worked in place of overtime pay. Compensatory time will be charged at the applicable rate earned, i.e., either straight time

8

or time and one-half, except that in the case of non-mandatory training, the Sheriff or his designee may offer the employee straight time compensatory time or pay (i.e., 8 hours for 8 hours) for time spent in such training.

The employee earning the overtime shall have the option of taking compensatory time off at a future date with prior approval of the Sheriff or his designee. Each employee shall be allowed to accumulate up to and including one hundred sixty (160) hours of compensatory time.

Section 5. Court Time. Any employee who is required to appear in Court during off-duty time to testify about a job related matter, will be paid at the rate of time and one-half his regular hourly rate. Such an employee shall be guaranteed a minimum of two hours show-up time, unless the time is contiguous with his regular shift.

Section 6. Leave Days. Leave days shall not be changed, switched or rescheduled to avoid paying time and one-half except by mutual agreement between the parties.

Section 7. Call Back. If an employee is called back to work on any other shift, he will be compensated for a minimum of two (2) hours overtime unless such call back shall extend past two (2) hours in which case he shall be paid overtime for hours or portions thereof worked.

## ARTICLE IX

## SENIORITY

Section 1. Departmental seniority is defined as continuous length of service with the Employer from date of last hire within the bargaining unit. Classification seniority is defined as continuous length of service with the Employer in the employee's present job classification. Seniority shall equal the time actually spent on the active payroll, plus approved paid leaves of absences, unless otherwise provided in this Agreement. A permanent full-time employee will begin to accumulate seniority upon the expiration of his probationary period, at which time his name will be placed on the seniority list as of his last date of hire as a full-time employee of the Department. Seniority shall entitle an employee only to those benefits as are expressly provided in this Agreement.

Section 2. A seniority list shall be prepared and a copy posted on the Bulletin Board. It shall be revised and kept current from time to time by the Employer.

Section 3. Seniority shall apply in cases of promotion to Sergeant or increases or decreases of forces provided the employees under consideration have the skill and ability

to perform the work. In determining the skill and ability the Employer shall have the right to consider the following factors:

(a)    Ability to perform the work

(b)    Physical fitness

(c)    Prior satisfactory experience

(d)    Test results on written or oral test prescribed by the Employer.

Section 4. An employee who transfers into a new classification shall have an eighty (80) work day probationary period. During the eighty (80) work days of the probationary period, the employee shall have the opportunity to revert back to his former position's classification. The Employer may require that the employee revert back to his former classification at any time during the probationary period. The decision of the employer during the eighty (80) work day probationary period is not subject to the grievance procedure. During the probationary period, the employee will receive the rate of the job he is performing.

Seniority during any probationary period will be measured from entry date into the classification only. During a probationary period, the employee shall retain seniority in his former classification. At the successful conclusion of the probationary period, the employee's classification seniority date for layoff and promotion will be changed to the employee's present classification.

Section 5. Temporary Assignments. Any employee assigned by the Sheriff to perform the duties of a higher ranking officer for a period in excess of thirty (30) consecutive working days shall be paid at the rate of pay applicable to the position involved. The increased pay rate shall commence on the thirty-first (31st) consecutive day in which the employee has held the assignment, and shall continue until the employee is reassigned to his or her normal (or another) lower ranking position. The Employer shall make assignments to temporary vacancies in higher positions based on all appropriate factors, one of which shall be seniority. When, in the opinion of the Employer, the vacancy is no longer temporary, but permanent, he shall follow the rules and regulations currently used by the Sheriff's Department to fill the permanent vacancy.

Section 6. Seniority shall be lost and employment relationship shall end under the following conditions:

(a)    By quit or discharge for cause, which discharge is not reversed through procedures set forth in this Agreement.

10

(b)     Failure to report for work on two consecutive work days without notifying the Sheriff or his designee without reasonable justification.(This does not prohibit disciplinary action for unexcused absences of less than two work days.)

(c)     Failure to return to work upon recall from a layoff.

(d)     Failure to return to work or notify the Sheriff or his designee without reasonable excuse at the expiration of a leave of absence.

(e)     Laid off for more than twenty-four (24) months.

(f)      Retirement.

(g)     He is convicted or pleads guilty or nolo contendere to a felony or high court misdemeanor.

Section 7. Probationary Period.  All employees shall be considered to be on probation, and shall have no seniority until they have actually worked for 2,080 hours following the first day of work for the Department.  Paid time off for vacation, holidays, and employer paid sick days shall be counted as time worked.  During this period, an employee is employed at will and may be laid off or discharged without regard to this Agreement.

ARTICLE X

LAYOFFS

Section 1. Lay Off.  Layoff shall mean a reduction in the work force.  The duties performed by the laid off employee may be reassigned to other employees already working.

Section 2. Order of Layoff.  Layoff of employees within the Deputies classification shall be made by inverse order of their classification seniority.

Section 3. Notice of Layoff.  The Sheriff shall give written notice to the employee and Union of any proposed layoff at least one (1) calendar week before the effective date thereof unless there are unforeseen circumstances which do not allow such advance notice.

Section 4. Recall Procedure.  When the working force is increased after a lay-off, employees will be recalled in inverse order of layoff.  Notice of recall shall be sent to the employee at the last known address by registered mail or certified mail.  If an employee fails to report for work within ten (10) calendar days from the date the notice of recall is mailed, he shall be considered to have quit.

Section 5. Benefit Continuation. The Employer shall continue to pay its share of the cost of life and health insurance premiums for laid off employees to the end of the month in which the layoff occurs and for the following four (4) months, but it shall terminate sooner if the employee has health insurance available from another employer. Thereafter, the laid-off employee may continue his health insurance in accordance with the federal law commonly known as "COBRA" and/or his life insurance for a period determined by the insurance carriers by paying 102% of the premiums. Payments should be made through the County Clerk's office.

## ARTICLE XI
## WORK BY NON-BARGAINING UNIT EMPLOYEES

Non-bargaining unit employees employed at the Sheriff Department may perform work covered by this Agreement provided that it does not result in a reduction in the regular contracted for work week of full-time bargaining unit employees. The Employer will not hire part-time officers through December 31, 2002. The Sheriff, however, may continue to have posse members for ride along, but posse members shall not take away bargaining unit work.

## ARTICLE XII
## LEAVES OF ABSENCE

Section 1. Family and Medical Leave. The Employer and the Union agree that the Employer shall have the right to develop, approve and implement policies on family and medical leave which comply with the Family and Medical Leave Act of 1993, as amended.

Section 2. Extended Sick Leave. An employee with seniority shall be granted a leave of absence without pay for up to six (6) months because of illness or injury following the exhaustion of paid disability insurance, accumulated sick leaves and time off for family and medical leave pursuant to the policies adopted by the Employer under Section 1 above. During such a leave of absence, seniority shall be retained but it shall not be accumulated. The employee will not accrue any vacation, personal or sick leave time. The employee is responsible to maintain at his own expense the employee group life insurance, hospitalization and surgical insurance during this period. A request for Extended Sick Leave shall be accompanied by a licensed physician's written certification as to the necessity and anticipated length of the requested leave. A prerequisite for reinstatement from a sick leave is that the employee present a written certificate from a licensed physician verifying that he is capable of returning to work.

The Employer reserves the right, at its expense, to require the employee to submit to an examination by a physician of its choice before granting such a leave of absence, during the leave or before reinstating the employee from such a leave of absence. In the event the Employer's physician and the employee's physician disagree, the disagreement shall be resolved by the judgment of an independent opinion shall be paid in equal shares by the Employer and the employee.

Section 3. Unpaid Personal Business Leave. An employee with seniority shall have the right to make written application for an unpaid leave of absence of a period of up to one (1) calendar month, for personal reasons of persuasive nature which shall be stated in the application. Granting of such leave shall be in the discretion of the Employer. If the leave is granted, seniority shall be reinstated and accumulated during the period of leave.

Extension of an unpaid personal business leave of absence may be granted, in the discretion of the Employer, for a further period or periods, to a total period of not to exceed six (6) calendar months. During such an extension or extensions, seniority shall be retained, but it shall not be accumulated.

Section 4. Workers' Compensation. If an employee is injured in the line of duty, he shall receive, pursuant to the applicable state statutes and regulations, Workers' Compensation benefits. Such an employee may apply accumulated sick pay, compensatory time or vacation time, in no less than one (1) hour increments, to make up the difference between regular net salary (gross salary less all deductions for federal, state and local taxes) and his Workers' Compensation benefits. Upon depletion of accumulated sick leave, compensatory time or vacation time, these differential payments will terminate.

Section 5. Bereavement Leave. When death occurs in an employee's immediate family, i.e., current spouse, parent or step-parent, parent or step-parent of a current spouse, child or step-child, brother or sister or grandchild, the employee, on request, will be excused for up to three (3) normally scheduled working days immediately following the date of death and ending with the day of the funeral, provided he attends the funeral. An employee who misses a scheduled day of work due to the death of a grandparent, shall receive one (1) day of paid funeral leave for the day of the funeral.

Additional bereavement leave may be granted without pay or from accumulated sick leave, compensatory time or vacation time for good cause shown.

An employee excused from work under this Article shall receive the amount of wages he would have earned by working during straight-time hours on scheduled days of work for which he is excused. Time thus paid will be counted as hours worked for purposes of overtime.

Bereavement pay is meant to compensate an employee who needs to be off work because of the death of a member of his immediate family (as defined in this Article). Time off will be granted only when it is consistent with this purpose.

Section 6. Military Service Leave of Absence. It is agreed that the matter of leaves of absence for, and reinstatement of an employee, during his period of military service with the Armed Forces of the United States, shall be solely governed by the applicable federal statutes as interpreted by the decisions of the Courts.

Section 7. Unpaid Leaves of Absence - General. All reasons for leave of absence shall be in writing stating the reason for the request and the approximate length of the leave requested. All leaves of absence must be approved by the Sheriff or his designee.

The employee who is on a leave of absence will not receive pay for the holidays falling within the leave of absence, nor will the employee accrue any vacation or sick leave time. The employee is responsible to maintain at his own expense the employee group life insurance, hospitalization and surgical insurance during this period, unless the employee is off on family and medical leave pursuant to the policies adopted by the Employer under Section 1 above. The employee must keep the Employer informed of any change in his status or conditions that caused the employee to request the leave. An employee returning from leave of absence shall be returned to his former classification and shift upon return from an approved leave of absence, providing his seniority allows.

ARTICLE XIII

SICK PAY

Section 1. All full time unit employees shall be allowed sick leave with pay at the rate of seventy two (72) hours in each calendar year of his employment. Each such employee shall be credited with seventy two (72) sick leave house on each January 1. The only exception is that during the calendar year in which an employee is hired, the employee will be credited with having earned six hours of sick leave with pay for each full calendar month worked.

**Section 2.** It is clearly understood that sick days are meant to compensate employees who are off work because of illness. Employees requesting sick days may be requested to present a supporting certificate of a physician. The Employer retains the right, at its own expense, to have the employee examined by a doctor of the Employer's choice.

**Section 3.** All full time unit employees shall be entitled to accumulate and carry forward paid sick leave credits in full earned after January 1, 1987, not used during the preceding calendar year or to convert said credits into a year-end bonus payable as provided in Section 7. The latter privilege is granted primarily as recognition that the Employer benefits by the uninterrupted service of employees. However, all employees are encouraged to accumulate sick leave credits rather than accept cash bonuses,

**Section 4.** Requests for bonus payments shall be given, in writing and signed by the employee, to the Employee no later than December 1, of each calendar year. There shall be only one such bonus payment date each year.

**Section 5.** At the date an employee terminates his employment with the Employer, a supplemental check shall be issued for sick leave credits unused and carried forward from the years following January 1, 1987, payable as provided in Section 7. Unused credits attributable to the year in which employment terminates shall automatically lapse.

**Section 6.** Unused sick leave credits accumulated by employees prior to January 1, 1987, (with a maximum accumulation of one hundred eighty (180) days allowed), shall be credited to the accounts of those employees. A maximum of six (6) unused sick leave credits accumulated prior to January 1, 1987 may be used by an employee during a calendar year before the employee must use the sick leave he has earned in that year. After the employee has used all the sick leave he has earned in that year, he may use the unused sick leave credits he accumulated prior to January 1, 1987.

**Section 7.** Paid sick leave shall be compensated on the basis of eight (8) hours of the regular rate of the employee as of the date the sick days are used or converted into a year-end or employment termination bonus. Sick leave days converted into a year-end or employment termination bonus shall be paid at the rate of sixty-seven percent (67%).

**Section 8.** An employee taking sick leave shall inform his immediate supervisor of the fact and the reason therefore prior to the starting time of the employee's scheduled work day. Failure to do so may be cause for denial of pay for the period of absence.

# ARTICLE XIV
## VACATIONS

Section 1. An employee is eligible for vacation with pay in accordance with the following schedule and terms:

| Seniority | Vacation Pay |
|---|---|
| 1 year or more | 80 hours |
| 5 years or more | 120 hours |
| 10 years or more | 160 hours |

Section 2. Vacation pay shall be computed on the basis of the employee's current rate at the time the vacation is taken. If a regular pay day falls during the employee's vacation and he is to be vacation for one week or longer, he will be entitled to receive that check in advance before going on vacation. Deductions from such check(s) shall be the same as if the employee received a paycheck every two (2) weeks. An employee must make a request to the Employer for his check two (2) weeks before leaving, if he desires to receive it in advance.

Section 3. To be eligible for full vacation pay an employee must have been a full-time (80 hours bi-weekly) employee and have received pay during all scheduled work hours during the year preceding his anniversary date or have received a paid leave during the same period. If an employee has any unpaid time during the twelve (12) calendar months preceding his anniversary date, his vacation period and pay shall be prorated accordingly. Disciplinary time off of two weeks or less will not affect the vacation pay computation.

Section 4. An employee whose employment terminates will receive vacation pay for any vacation earned and accrued as of his previous vacation benefit date unless the pay was received earlier. There is no pro-rated vacation pay for the vacation benefit year during which employment terminates.

Section 5. Vacations will be scheduled by the Employer at mutually convenient times subject to the need for having particular employees on particular jobs at particular times. Seniority will be honored, to the extent possible, in granting employee requests for particular vacation periods. Employees may schedule their vacations in less than full week increments when mutually convenient.

Section 6. All vacation credits earned as of the employee's anniversary date should be taken during the following twelve (12) months. Vacation days which remain unused at the end of a vacation year may be accumulated up to a maximum of eighty (80) hours.

16

There shall be no accumulation of vacation time in excess of eighty (80) hours. Employees must take their allowed vacation days or forfeit it.

Section 7. Vacations in different vacation years may not be scheduled back to back without written approval of the Employer.

Section 8. If a holiday falls within an employee's scheduled vacation period, an extra days vacation will be allowed for the holiday.

ARTICLE XV

HOLIDAYS

Section 1. The following holidays are recognized for full-time unit employees.

New Year's Day                     Labor Day

Easter                             Thanksgiving Day

Memorial Day                       Christmas Day

Independence Day

Section 2. The Employer retains the right to schedule employees to work on a holiday or alternatively to dismiss them with pay, as is the usual practice with other County employees. Any employee who would normally work on the holiday but who is dismissed because of the holiday shall not have the day charged as a "Leave Day" nor will he or she be required to make up the work time at a different time.

Section 3.

(a)    Uniformed officers normally are scheduled to work irrespective of holidays. If a full-time unit employee is scheduled to work and does work on a recognized holiday, he shall receive the equivalent of two and one-half (2 ½) times pay by receiving either:

(1)    his regular pay plus an additional half-time plus a compensatory day off; or

(2)    his regular pay plus eight (8) hours holiday pay plus four (4) hours compensatory time off.

The employee shall indicate on his time sheet the manner in which he chooses to be paid for the holiday. Compensatory days off must be taken at a time mutually convenient to both the employee and the Employer. Instead of granting compensatory time off, the Employer may substitute pay for the compensatory time at the rate of straight-time pay.

(b)    If a full-time unit employee does not work on a recognized holiday because the holiday falls on a Leave Day, he shall receive a compensatory day off at a time

17

mutually convenient to both the employee and the Employer. Instead of granting a compensatory day off the Employer may substitute pay for the compensatory day at the rate of straight-time pay.

Section 4. Employees Who Normally Work Monday Through Friday. When a holiday falls on a Saturday, the preceding Friday shall be observed as the holiday recognized by this Agreement; when it falls on a Sunday the following Monday shall be observed as the holiday, excepting that, whenever state or federal statute requires that any or such holidays be observed on a day or date other than as set forth above, the holiday shall be observed on the day or date prescribed by state or federal statute, whichever is controlling.

Employees Who Normally Are Scheduled to Work Any of Seven Days In The Week. Holidays which fall on Saturdays shall be recognized and celebrated on Saturday. Holidays which fall on Sunday shall be recognized and celebrated on Sunday.

Section 5. Each full time employee is entitled to five (5) personal leave days per calendar year (to compensate for the Department being open on Washington's and Lincoln's Birthdays, among others). Such personal leave days shall be scheduled at the mutual convenience of the Employer and the employee. However, employees who give not more than fourteen (14) calendar days prior notice to the Employer and not less than forty-eight (48) hours prior notice of the desire for personal leave shall be notified within twenty-four (24) hours of receipt of same by the Sheriff or his designee and shall be notified if it is approved or denied. Unused personal leave shall be paid off by the employer by January 31 of the following year.

## ARTICLE XVI

## WORKERS' COMPENSATION INSURANCE

The Employer shall provide Workers' Compensation protection for all employees. If an employee is absent from work due to an injury sustained in the line of duty which is compensable under the Michigan Workers' Disability Compensation Act, he or she may request that the Board of Commissioners voluntarily continue his or her regular net salary (gross salary less all deductions for federal, state and local taxes) for the first week he or she is on Workers' Compensation leave. Such decision will be at the Board of Commissioners' discretion.

## ARTICLE XVII

## LONGEVITY PAY

It is agreed that all regular, full time employees in the active service of the Employer as of December 31 of any year shall be entitled to receive longevity pay for length of continuous service with the Employer according to the following rules and schedule of payment.

1.  Longevity Pay Schedule
    Continuous Service
    The longevity pay schedule shall be the following: Five (5) or more years - $25/year (maximum payment - $600)

2.  Date of Payment
    Longevity payments shall be made on the first pay day in December.

3.  Proration
    Any employee eligible for longevity pay who terminates employment in good standing or retires during the course of a calendar year is entitled to receive longevity pay prorated for each entire month worked prior to termination. Such employees shall receive their longevity payments on the first pay day in December.

## ARTICLE XVIII

## HOSPITAL - MEDICAL INSURANCE

Section 1.  The Employer shall make available benefits under the County's Self-Funded Health Insurance Plan 4801 to all employees and their dependents. New employees may elect this coverage with the Employer paying twenty five percent (25%) of the applicable premium and the employee paying seventy five percent (75%). The drug rider is to change to five dollars ($5.00) at a time to be determined by the Employer. If the employee opts not to take such coverage, he will be eligible for coverage at the end of six (6) months of employment or at any open enrollment time thereafter. After the employee has been with the Department for six (6) months, the Employer will cover one hundred percent (100%) of the applicable premium for the employee and his dependents. Coverage will begin on the date of hire or on the six-month anniversary date.

Section 2.  Reimbursement.  The Employer agrees to reimburse employees covered by the benefits described in Section 1 above pursuant to the Barry County Medical Reimbursement Plan.

Section 3.  Cash Payment Option.  In lieu of health insurance coverage, employees who have completed six (6) months of service with the Department and are covered by health insurance from another source may elect to receive a cash payment each two-week pay period equal to fifteen percent (15%) of the amount of the monthly premium rate for the insurance coverage (single, two person or family) that the employee is eligible to receive, provided that in no event shall the bi-weekly payments be less than Thirty-Seven Dollars and Fifty Cents ($37.50).

Section 4. Hospitalization for Retirees.  An employee who retires and is receiving retirement benefits after reaching age 50 will be eligible to receive hospitalization benefits up to age 65, with the Employer paying a monthly contribution as follows:

| Employee's Years of Service | Employer Monthly Contribution |
| --- | --- |
| 25 or more | up to $200.00 |
| 15-25 | up to $120.00 |
| 10-15 | up to $ 80.00 |
| less than 10 | 0 |

It is agreed and understood that upon a retired member reaching the age of 65, or upon the death of a retired member, the full health insurance coverage outlined in Sections 1 and 2 of this Article is canceled; provided, however, that in the event of the death of a retired member, the surviving spouse or any minor child, shall have the option to maintain said insurance in accordance with the federal law commonly known as "COBRA."

It is further agreed and understood that the Employer's responsibility for health insurance coverage to a retired member who is eligible for other health insurance coverage, either through his own employment or that of his spouse, is limited to paying the amount for single subscriber health insurance coverage or the applicable Employer monthly contribution set out above, whichever is less.

Section 5. Supplement to Medicare.  Any retired employee at the age of 65, and his or her spouse, may elect to be covered by the County's Complementary Insurance Program (supplement to Medicare) at their own expense.

Section 6. The Employer shall maintain a dental/optical/hearing account for each employee covered by this by this Agreement. On or about January 1 of each year of this Agreement, the Employer shall credit to the account of each employee four hundred twenty five ($425) dollars.

These amounts may be used by the employee for reimbursement of dental, optical and/or hearing expenses for the employee and his/her dependents which may be through the Teamsters program. A request for reimbursement must be made within ninety (90) days after the service was rendered and must be accompanied by a written statement signed by the dentist, ophthalmologist, optometrist, optician or medical provider performing the service. Such statement shall specify the service performed and the date of the service. The amount credited to an employee's dental/optical/hearing account may be accumulated from year to year. However, any balance remaining in the account upon termination shall be forfeited. Employees are entitled to dental/optical/hearing account upon completion of six (6) months service.

## ARTICLE XIX
## LIFE INSURANCE

Section 1. After six (6) months of full time employment, life insurance coverage will be Seventeen Thousand ($17,000) Dollars and accidental death and dismemberment insurance will be Thirty Four Thousand ($34,000) Dollars ($17,000 life plus $17,000 accidental death and dismemberment).

## ARTICLE XX
## PAID DISABILITY INSURANCE

Section 1. Income Protection Plan. The Employer shall provide an income protection plan due to non-occupational illness, sickness or injury which totally disables the employee from performing his regular employment duties. Employees are entitled to paid disability insurance upon completion of six (6) months service. Benefits shall be limited as follows:

A. Benefits to commence on the eighth (8th) day of illness, sickness or injury
(one week waiting period).

B. Benefit period to be limited to not more than fifty two (52) weeks.

C. Benefit amount to be sixty-seven percent (67%) of weekly salary.

An employee shall have the option of using accumulated sick, compensatory or vacation time to supplement the income protection plan benefits up to his regular net salary.

21

The Employer shall continue to pay its share of the cost of life and health insurance premiums for the length of the disability up to a maximum of the month of disability plus four (4) months. Disability which is caused or contributed to by pregnancy, childbirth, or related medical conditions shall be treated the same as any other disability under this plan.

## ARTICLE XXI

## MISCELLANEOUS

Section 1. Notification of Policy, Procedure, Rule, Regulation or Training. A copy of each policy and procedure, rule, regulation or training bulletin shall be made available to the Chief Steward at least one (1) week before implementation, unless conditions warrant immediate implementation due to a State law, or rule, or regulation or court order.

Section 2. Provision for Legal Counsel. The Employer shall provide to the employee such legal assistance as shall be required or needed as a result of acts occurring during the good faith performance and within the scope of an employee's lawful job related duties and responsibilities.

Section 3. Tuition Reimbursement. The Employer will assist in tuition reimbursement for courses related to police work or a related field which lead to improvement in knowledge and/or skills in the employee's present job as determined and approved by the Sheriff according to the following eligibility requirements and payment schedule:

(a) Individual Eligibility

    (1) The employee must be a full-time employee who has successfully passed his probationary period prior to enrollment in a course.

    (2) The employee cannot be on a leave of absence when enrolled in a course.

    (3) The employee must still be employed by the Employer at the completion of the course.

(b) Payment

    (1) Employees will be reimbursed for tuition at the successful completion of a prior approved course up to a maximum of $400 per year for courses completed in a twelve (12) month period provided:

(a)    A Tuition Reimbursement Form is submitted which includes a course description and is approved by the Employer prior to enrollment in a particular course.

(b)    After successful completion of the course, the original approved Tuition Reimbursement Form is resubmitted along with:

    1.    The original tuition receipts with written evidence that the employee paid for the tuition of that course.

No Employer reimbursement will be made for tuition payments either paid directly from or reimbursed from other sources such as scholarships, fellowships, or veterans benefits but not limited to these sources.

    2.    Written grade report of a "C" or better, credit in a credit/non credit course or written verification of attendance (for courses where grades or credits are not issued) in the completed course.

Tuition Reimbursement transactions must be completed within ninety (90) days from the completion date of the class. Payment authorization is void after ninety (90) days.

(2)    Tuition expense is all that will be reimbursed under this program. There will be no reimbursement for expenses such as meals, lodging, books, transportation to and from school, activity or other special fees.

(3)    Tuition paid by the Employer will be repaid by the employee if the employee voluntarily terminates employment within one (1) year of the date the employee received the tuition reimbursement.

Section 4. Gender. Whenever the male gender is used in this agreement the female gender shall be equally presumed and vice versa.

Section 5. Special Conferences. Special conference for important matters, including safety, will be arranged between the Association and the Employer or its designated representative at mutually convenient times and places when there are important matters to discuss. Such meetings shall be between one or more representatives of the Employer and one or more representatives of the Association. Arrangements for such special conferences shall be made in advance and an agenda of the matters to be taken up at the

meeting shall be presented at the time the conference is requested. Matters taken up in special conference shall be confined to those included in the agenda, unless both parties agree to include other items. Special conferences shall not be used for continued contract negotiation purposes. Up to two (2) employee representatives will be compensated for scheduled work hours lost while in attendance at these joint meetings. Conferences shall be held on a week day.

Section 6. Humanitarian Clause. Should an employee covered by this Agreement become disabled to the extent he/she cannot perform his/her regular job, the Employer will endeavor to place the employee in a position that he/she is able to perform within the bargaining unit.

## ARTICLE XXII
## PENSION

Section 1. Employees covered by this Agreement will be subject to the State of Michigan Municipal Employees Retirement System (MERS) [Plan B-2 with Benefit Program F50] (with 25 years of service). Effective July 1, 1996, the pension will be changed to Plan B-4 with Benefit Program F50 (with 25 years of service). Employees shall be responsible for paying the total contribution increase to support the change from Plan B-2 to Plan B-4 as a percentage of salary. The Employer is authorized to deduct from employees' payroll checks the amount of employee contributions to support the change to Plan B-4.

Section 2. Effective January 1 of each year of this Agreement, the Employer will adopt Benefit Program E (Section 68) so that current retirees will have their retirement benefits re-computed by the following percent:

> 100% plus 2% for each full year in the period from the date of the most recent Benefit Program E increase (or date of retirement, if later) to the January first as of which redetermination is being made. The new benefit amount will be payable thereafter.

## ARTICLE XXIII
## STRIKES AND ILLEGAL ACTIVITY

Section 1. Neither the Union nor any employee shall, either directly or indirectly, cause, attempt to cause, or participate in any strike of any sort whatsoever, either directly or indirectly, any complete or partial stoppage of work or walkout, slowdown, or refusal to do work or interfere in any manner with any of the normal operations of the Employer or any

conduct which causes or results in such interference. Violation of this provision subjects an employee to appropriate disciplinary action.

## ARTICLE XXIV
## SEVERABILITY PROVISION

Should any part hereof or any provision herein contained be rendered or declared illegal by reason of existing or subsequently enacted legislation or by a Court of competent jurisdiction or an unfair labor practice by final decision, such invalidation of such part or portion of this Agreement shall not invalidate the remaining portions thereof.

## ARTICLE XXV
## UNION BUSINESS

Section 1. With the prior approval of the Sheriff of his designee, stewards of the Union are authorized within reason, to transact business with the Barry County Board of Commissioners, County Clerk, and/or other Barry County Officials without loss of pay or other penalty while engaged in such duties.

## ARTICLE XXVI
## MILEAGE FOR OFFICIAL USE OF PERSONAL CARS

All bargaining unit members will be reimbursed at the standard mileage rate allowed as a deduction by the Internal Revenue Service for the official use of their personal motor vehicles, when such use is authorized by the Sheriff or his designee.

## ARTICLE XXVII
## SAFETY AND EQUIPMENT

Section 1. Employees shall immediately, or at the end of their shift, report all defects of equipment. Such reports shall be made on a suitable form furnished by the Employer and shall be made in multiple copies; one copy to be retained by the employee. The Employer shall not ask or require any employee to take out equipment that has been reported to be an unsafe operating condition until same has been approved as being safe by the mechanical department or the Sheriff or his representative.

When the occasion arises where an employee gives a written report on forms in use by the Employer of a vehicle being in an unsafe working operating condition, and receives no satisfactory explanation from the Employer, he shall take the matter up with the officers of the Association who will take the matter up with the Employer.

The Employer will reimburse employees for damage caused to personal items incurred in the line of duty provided such equipment is approved by the Sheriff. The Sheriff retains the right to determine if any reimbursement will be made consistent with this policy.

Section 2. All vehicles purchased will be equipped with air conditioning.

## ARTICLE XXVIII

## UNIFORM ALLOWANCE

Section1. The Employer will furnish all uniforms (including leather accessories and uniform cleaning but excluding shoes.

Section 2. Commencing June 1, 1996, employees who are not required to wear a uniform by virtue of their permanent assignment shall be paid a clothing/cleaning allowance during the first full pay periods of the following months in the following amounts:

| Year | January | July | December |
|------|---------|------|----------|
| 1999 |         | $400.00 | $400.00 |
| 2000 | $400.00 | $400.00 |         |
| 2001 | $400.00 | $400.00 |         |

Section 3. Professional law enforcement quality raincoats and bullet-resistant vests will be furnished by the Employer to road patrol officers. Vests shall be replaced upon the expiration of the manufacturer's warranty. The Sheriff will describe the quality of the vest which can be purchased and the level of reimbursement.

Section 4. The Employer retains the right to prescribe the dress code for all members of the department.

## ARTICLE XXIX

## GUN ALLOWANCE

Section 1. It is agreed that all regular full-time Law Enforcement Officers in the active service of the Employer as of January 1 each year, shall be entitled to a gun allowance of $225 per year. Such payments, however, will be made on the first pay day in December, prior to January 1.

Section 2. The gun allowance for new officers shall be prorated depending on the number of full calendar months in the year during which the employee has been a Barry County Sheriff's Deputy (e.g., an employee hired on July 1 shall receive $112.50, 6/12 of $225).

26

Section 3. Any eligible employee who terminates employment in good standing or retires during the course of a calendar year is entitled to receive a gun allowance prorated for each entire month worked prior to termination. Such employees shall receive their gun allowance payments on the first pay day in December.

Section 4. Gun allowance and longevity pay may be paid in the same check, but each check shall be separate from an employee's regular pay check.

Section 5. Weapons Training. The Employer shall provide each officer at county expense, one box (50 rounds) of ammunition per month, for use in weapons training, practice, and familiarization techniques. The ammunition must be picked up and used by each officer during the calendar month in order for the employee to be eligible to receive that month's allotment.

## ARTICLE XXX
## UNION STEWARDS

Section 1. Union employees shall be represented by one Steward and an alternate Steward. During periods of absence of the Steward, the alternate Steward shall represent the employees.

Section 2. The authority of the Steward, or alternate, is limited to the investigation and presentation of grievances and request for special conferences during his working hours, without loss of time or pay, upon having received permission from the Sheriff, or Undersheriff, or immediate Supervisor, in their absence to do so. The Sheriff shall grant permission within a reasonable time, after the first hour of the shift, for such Steward to leave his work for these purposes subject to the understanding that the time will be devoted to the proper processing of grievances and will not be abused. Abuse of such privilege is proper grounds for discipline up to and including discharge. The Steward, and alternate, may be required to record time spent. All stewards will perform their regular duties in addition to the handling of grievances as provided herein.

Section 3. The Union will furnish the Employer with the names of its Stewards and officers who are employed within the unit and changes as they may occur from time to time in such personnel so that the Employer may at all times be advised as to the authority of the individual representatives of the Union with which it may be dealing.

## ARTICLE XXXI

## WAIVER

It is the intent of the parties that this Agreement contains all economic and non-economic terms and conditions of employment applicable to employees covered by this Agreement. Both parties accordingly acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement. Therefore, the Employer and the Union, for the life of this Agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter not specifically referred to or covered by this Agreement, even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time that they negotiated or signed this Agreement.

## ARTICLE XXXII

## DURATION, TERMINATION AND MODIFICATION OF THIS AGREEMENT

Section 1. This Agreement shall continue in full force and effect until December 31, 2002, at 11:59 p.m.

IN WITNESS WHEREOF, the parties have set their hands and seals this_____ day of _____, _____.


TEAMSTERS, LOCAL 214

BY:

BARRY COUNTY BOARD OF COMMISSIONERS

BY:

SHERIFF OF BARRY COUNTY

BY:

28

# DEPUTY SHERIFFS' HOURLY SALARIES

## APPENDIX A

|  | 1/1/99* | 1/1/00* | 7/1/00 | 1/1/01 | 7/1/01 | 1/1/02 | 7/1/02 |
|---|---|---|---|---|---|---|---|
| Deputy - 3 yr. | 16.63 | 16.97 | 17.31 | 17.66 | 18.01 | 18.37 | 18.74 |
| Deputy - 2 yr. | 15.41 | 15.72 | 16.03 | 16.35 | 16.68 | 17.01 | 17.35 |
| Deputy - 1 yr. | 14.95 | 15.26 | 15.57 | 15.88 | 16.20 | 16.52 | 16.85 |
| Deputy - 6 mo. | 14.15 | 14.43 | 14.72 | 15.01 | 15.31 | 15.62 | 15.93 |
| Deputy - start | 12.82 | 13.08 | 13.34 | 13.61 | 13.88 | 14.16 | 14.44 |

\*    Retroactive for employees employed upon the date of ratification by the parties.

N:\Client\BARRY\Deputies\Agr99-02.wpd

# Letter of Agreement

This document is a letter of agreement between the Sheriff of Barry County, for the Barry County Sheriff's Office and the Deputy Sheriff's Union, Teamsters Local 214 representing the Road Patrol Deputies Bargaining Unit.

This Letter of Agreement is made with the Sheriff and is in addition to the Contract established for the period of Jan. 1, 1999 through Dec. 31, 2002.
This letter is to establish an agreement on the use of part-time employees for duty as Marine Patrol Officers for the Barry County Sheriff Office.

This Agreement recognizes that the part-time Marine Patrol employees will not be covered by the Teamsters Local 214 Contract and will not become members of the Local 214 Union.

It is Agreed by the undersigned parties that the use of part-time employees will be allowed for service in the Marine Patrol Unit only, and that at no time will work performed by these employees result in a reduction in the regular contracted for work week of the full-time employees of this bargaining unit.

This letter applies only to the hiring and employment of Marine Patrol Officers for the seasonal positions as held in the past, and during prior contracts. This letter of Agreement will expire on the last day of the Contract currently in force.


DATED: _25 MAY 2001_  BY: _James Fawcett_

James Fawcett, Union Representative for the

Deputy Sheriff Unit of Barry County,

Teamsters Local 214


DATED: _May 29, 2001_  BY: _Stephen H. DeBoer_

Stephen H. DeBoer

Sheriff of Barry County

# Letter of Agreement

This document is a letter of agreement between the Sheriff of Barry County, for the Barry County Sheriff's Office and the Deputy Sheriff's Union, Teamsters Local 214 representing the Road Patrol Deputies Bargaining Unit.

This Letter of Agreement is made with the Sheriff and is in addition to the Contract established for the period of Jan. 1, 1999 through Dec. 31, 2002.
This letter is to establish an agreement on the use of a part-time employee for duty as A Court Security/Bailiff Officer for the Barry County Courts.

This Agreement recognizes that the part-time Court Security/Bailiff Officer will not be covered by the Teamsters Local 214 Contract and will not become a member of the Local 214 Union.

It is Agreed by the undersigned parties that the use of this part-time employee will be allowed for service in the Barry County Courts only, and that at no time will work performed by this employee result in a reduction in the regular contracted for work week of the full-time employees of this bargaining unit.

It is agreed that Sue Delcotto, a retired Deputy, from the Barry County Sheriff Department will fill this position. This position will take effect when signed by the representatives of this Agreement.

It is agreed that this part-time Court Security/Bailiff Officer will not replace any Deputies working these positions as of the date of enactment.

This position will expire on Dec. 31st 2001.

It is agreed that the Sheriff and a representative of the Barry County Courts will seek to make the part-time position a full time position to be filled with a Deputy from the Barry County Sheriff Department without loss to the road patrol unit.

This letter applies only to the hiring and employment of a Part-time Court Security/Bailiff Officer for the Barry County Courts. This letter of Agreement will expire on the last day of December 2001.

DATED: _07/02/2001_    BY: _(signature)_ _____

James Fawcett, Union Representative for the

Deputy Sheriff Unit of Barry County,

Teamsters Local 214

DATED: _7/2/01_    BY: _(signature)_ _____

Stephen H. DeBoer

Sheriff of Barry County