# 4

# VOLUNTARY LABOR ARBITRATION

# IN THE MATTER OF THE ARBITRATION BETWEEN

COUNTY OF BARRY MICHIGAN

**and**

TEAMSTERS LOCAL 214

GR: D. Leaf, Seniority and Past Practice

## ARBITRATOR'S OPINION AND AWARD

### ARBITRATOR: Daniel H. Kruger

DATE: November 18, 2002

**APPEARANCES**

**FOR THE UNION**
Darin Leaf, Grievant
Nick Seifert, Deputy
Verlie Del Cotto, Witness
Fred Bennett, Business Agent
Katherine Smith Kennedy, Attorney

**FOR THE EMPLOYER**
Stephen DeBoer, Sheriff
Ruth E. Mason, Attorney

# INTRODUCTION

This is a proceeding under Article VI, entitled "Grievance Procedure" between BARRY COUNTY BOARD OF COMMISSIONERS and SHERIFF OF BARRY COUNTY, hereinafter referred to as the Employer, and TEAMSTERS LOCAL 214 FOR DEPUTY and SHERIFF UNITS, hereinafter referred to as the Union for 1999-2002 (Joint Exhibit #1).

The arbitration hearing was held on August 14, 2002 at the Courthouse in Hastings Michigan. The parties had selected Daniel H. Kruger as the Arbitrator, through Michigan Employment Relations Commission.

At the hearing the parties were given the opportunity to present their respective positions on the grievance, to offer evidence, to present witnesses and to cross examine witnesses. At the conclusion of the hearing, the parties were asked by the Arbitrator if they planned to submit post hearing briefs. Both parties indicated that they would submit briefs. The Briefs were received by the Arbitrator on or about October 8, 2002.

# ISSUE

This issue in this grievance is: 'Did the Employer violate the seniority provision of the Collective Bargaining Agreement and past practice by not assigning the grievant to a Court Officer position?' If not, what should the remedy be?

# PERTINENT CONTRACT LANGUAGE

## ARTICLE IV RIGHTS OF THE BOARD AND THE SHERIFF

Nothing in this Agreement shall be deemed to limit or curtail the Employer in any way in the exercise of the rights, powers, and authority, which the Employer had prior to January 1, 2969, or thereafter, *unless and only to the extent that specific provisions of this Agreement curtail or limit such rights, powers, and authority.* These rights include but are not limited to those provided by statute or law along with the right to direct, hire, promote, transfer, assign, and retain employees in positions within the Sheriff's Department. Further to suspend, demote, discharge to take such other disciplinary action which is necessary to maintain the efficient administration of the Sheriff's Department. It is also agreed that the Sheriff has the right to determine the method, means and personnel, employees or otherwise, by which the business of the Sheriff's Department shall be conducted and to take whatever action is necessary to carry out the duty and obligation of the county to the taxpayers thereof. The Sheriff shall also have the power to make rules and regulations related to personnel policies, procedures and working conditions not inconsistent with the express terms of this Agreement.

The Union reserves the right to grieve when action taken by the Employer under this Section is contrary to the specific limitation of such Employer Rights contained in this Agreement (Emphasis added).
**Joint Exhibit #1, page 3**

## ARTICLE IX SENIORITY

<u>Section 1</u> Departmental Seniority is defined as continuous length of service with the Employer from date of last hire within the bargaining unit. Classification seniority is defined as continuous length of service with the Employer in the employee's present job classification. Seniority shall equal the time actually spent on the active payroll, plus approved paid leaves of absences, unless otherwise provided in this Agreement. A permanent full-time employee will begin to accumulate seniority upon the expiration of his probationary period at which time his name will be place don the seniority list as of his last date of hire as a full-time employee of the Department. Seniority shall entitle an employee only to those benefits as are expressly provided in this Agreement.

<u>Section 3</u> Seniority shall apply in cases of promotion to Sergeant or increases or decreased of forces provided the employees under consideration have the skill and ability to perform the work. In determining the skill and ability the Employer shall have the right to consider the following factors: a) Ability to perform the work; b) Physical fitness; c) Prior satisfactory experience; and d) Test results on written or oral test prescribed by the Employer.
**Joint Exhibit #1, page 9-10**

## ARTICLE XXXI WAIVER

It is the intent of the parties that this Agreement contains all economic and non-economic terms and conditions of employment applicable to employees covered by this Agreement. Both parties accordingly acknowledge that during the negotiations which resulted in this Agreement, each had

IN THE MATTER OF THE ARBITRATION BETWEEN COUNTY OF BARRY MICHIGAN and TEAMSTERS LOCAL 214, D. Leaf, Grievant        3

the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement. Therefore, the Employer and the Union, for the life of this Agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter not specifically referred to or covered by this Agreement, even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time that they negotiated or signed this Agreement.
**Joint Exhibit #1, page 28**

# CASE HISTORY

The grievant, Darin Leaf, is a Deputy Sheriff with a seniority date of April 22, 1989. The position of Court Officer became available in June 2000 when Court Officer Sue Del Cotto's retirement became effective. The grievant was in the School Liaison position. Officer Joel Funk was the most senior office interested in the position. He was offered the position of Court Officer and he accepted the position (see Union Brief, page 5). Officer Del Cotto signed a letter of agreement to continue in the position until December 2001 as the Sheriff's Department was in the process of obtaining funding for another full time Court Officer (see Union Brief, page 5).

In August 2001, the grievant was removed by the Sheriff from the School Liaison position and placed on the third shift patrol (Union Brief, page 6). The removal of Grievant Leaf and his placement on the third shift patrol is the subject of another grievance which is being arbitrated (see Union Brief, footnote 5, also see Union Exhibit #5).

Funding for the second full time Court Officer became effective January 2002. The position was posted on December 10, 2001 (Note: The Employer could not produce a copy of the posting [see Union Brief, page 6, footnote #6). Grievant Leaf applied by the position and had the most seniority of all who applied. Officer DeMaagd, however, received the position. His date of

hire was May 4, 1992 (see Union Brief, page 6; see Union Exhibit #7 for seniority date).

On December 12, 2001, the grievant filed a grievance which read:

**List Articles Violated:** Past Practice
**Grievant's Statement:**
Deputy Leaf was denied a day position in which he has three years seniority over the subject awarded. Past practice was started when Deputy Nevins was allowed to bump Deputy Hildreth from the same position. While Deputy Nevins was off on a medical leave Deputy Del Cotto was told that she was going to take over for Nevins, as the courts did not want Hildreth to come back. When Nevins was back into the work force the courts did not want Nevins back and wanted Del Cotto to remain as Court Officer. After Del Cotto retired Deputy Funk was offered the position without a posting. Deputy DeMott did not want the position and then Funk was next in line with seniority. When the new court position opened it was posted and Deputy Leaf was denied and Deputy Demaagd was awarded the position regardless of seniority and qualification.
**Remedy requested:**
That Deputy Leaf be granted the position of Court Officer effective January 1, 2002. Let seniority be honored as it has been in the past.
**Joint Exhibit #2A**

On December 11, 2001, the Undersheriff denied the grievance based on Article IV of the Agreement, Joint Exhibit 2B (see page 3 of this Award for Article IV).

The grievance was appealed to the third step of the grievance procedure which is the Sheriff's Department Grievance Board (see Joint Exhibit #2, pages C & D).

On January 23, 2002, the Sheriff's Grievance Board denied the grievance (Joint Exhibit #2, page E).

On February 29, 2002 the Union notified the Employer that it was taking the grievance to arbitration pursuant to Article VI Joint Exhibit #1, (see Joint Exhibit #2, page F).

The parties stipulated that the grievance is properly before the Arbitrator.

There was some discussion that Article IX, Section 3 of the Seniority provision was not cited in the original grievance. The record however indicated that Mr. Michael Brown, County Administrator treated the grievance as being appropriate since he made the arrangements for the

Sheriff's Department Grievance Board to hear the appeal (see Joint Exhibit #2, pages C & D; see also Union Brief, pages 7 & 8).

# DISCUSSION OF ISSUES

## POSITION OF THE UNION

It is the position of the Union that a past practice was violated by the Employer by not selecting the grievant for the position of Court Officer. It was noted that when the position was created, Deputy Dan Nevins was the most senior (see Union Brief, page 5; see also Union Exhibit #6). He, however, was not interested and the position was offered to the next officer with the highest seniority, Tom Hildreth. Hildreth had a heart attack and was on medical leave. Officer Nevins was asked if he wanted the position temporarily. Officer Nevins accepted the position. When Officer Hildreth returned form medical leave, he wanted the position of Court Officer back. Officer Nevis however, did not want to relinquish the position. The position was posted and Officer Nevis was successful since he had the most seniority. The Union pointed out that Sheriff DeBoer could not recall how Nevins or Hildreth got to be Court Officers (see Union Brief, page 5; see also Union Brief, page 5 footnote 3).

Officer Nevins was relieved from the position because of performance issues according to the Union. When this occurred, Sergeant Abendroth approached Officer Del Cotto about the position of Court Officer since she had the next highest seniority. Officer Del Cotto accepted the position which she held for five (5) years. She testified that the position of Court Officer had always been filled according to seniority (see Union Brief, page 5).

The funding for the second full time Court Officer came through, effective January 2002. Grievant Leaf applied for the position. He had the most seniority of all the applicants but Officer DeMaagd got the position. The grievant's seniority date was May 4, 1992 (see Union Brief, page 6; see also Seniority List, Union Exhibit #7).

Judge Fischer, Chief Judge, testified that he was approached by the Sheriff to learn whom he would like to fill the new Court Officer position. Judge Fischer testified that he met with the other judges and together they decided that the wanted Office DeMaagd for the position (Union Brief, page 6).

It is the position of the Union that the position of Court Officer has always been occupied by an officer with the most seniority (Union Brief, pages 9-10). The Union contended that when the Sheriff did not select the grievant for the position of Court Officer, he violated the established past practice (Union Brief, page 10).

Moreover, it is the position of the Union that the Employer violated the seniority provision of the Collective Bargaining Agreement (Article IX) by not selecting the grievant for the Court Officer position (see Union Brief, page 10; see also Article IX, Seniority on page 3 of this Award).

The Union maintained that the grievant 's experience in the School Liaison position encompassed many of the job duties as the Court Officer (see Union Brief, page 11; see also Union Exhibit #3).

The Union contended that Sheriff DeBoer was bias against the grievant. It cited as one reason for the bias was the class the grievant was teaching and his involvement with a David Stevens, the president of the local National Rifle Association. Whether the Sheriff is biased

against the grievant is not the issue before this Arbitrator. The decision relative to removing the grievant from the School Liaison Officer is not before this Arbitrator.

The Union further maintained that the Sheriff asking Judge Fischer for his recommendation as to who should be selected to fill the new position of Court Officer violated the Collective Bargaining Agreement (Union Brief, page 13). The Union noted that the Agreement does not allow for this method of selection of the Court Officer (Union Brief, page 13). The Union went on to say that the Employer wants in arbitration that it cannot get in collective bargaining (see Union Brief, page 13).

In summary, the Union maintained that the Employer violated a past practice, that it violated the Article IX, Seniority and that it violated the Collective Bargaining Agreement by asking Judge Fischer for his recommendation (Union Brief, page 14).

Accordingly, the Union requested that the grievance be granted. As relief, the Union stated that Grievant Leaf is to be awarded the position of Court Officer and that he be paid all back pay due (Union Brief, page 14).

## POSITION OF THE EMPLOYER

It is the position of the Employer that it did not violate the labor agreement by not assigning the grievant to the position of Court Officer. It maintained that the Sheriff, pursuant to Article IV had the right to make work assignments (see page 3 of this Award for Article IV).

The Employer pointed out that prior to the date of the arbitration hearing, the Union relied on past practice in its claim that the position of Court Officer be filled on the basis of seniority. At the hearing, the Union contended for the first time, a violation of Article IX, Section 3 (see

Employer Brief, page 9).

Since the Union contended for the first time at the arbitration hearing that the Employer violated Article IX Section 3, the Employer stated that the Arbitrator should not consider this last minute argument (see Employer Brief, page 11). Moreover, the Employer maintained that Article IX Section 3 is not applicable to the instant grievance since the Employer's position is that this is not a new position, i.e., an increase in the force (see Employer Brief, pages 11-12).

As noted above, the Sheriff asked Chief Judge James Fischer for the recommendation of the judges to fill the position of Court Officer. The judges recommended Deputy DeMaagd. The Sheriff further testified that when Deputy Del Cotto was considered for the position of Court Officer, he asked the judges for their recommendation and Ms. Del Cotto was the preferred candidate (see Employer Brief, page 10).

The Employer contended that the language of Article IV, Management Rights, is clear and unambiguous. The Sheriff has the right to make assignments (Employer Brief, pages 14-15).

Moreover, the Employer maintained that the Union, in relying on past practice has failed to demonstrate the critical elements of past practice such as "a fixed and established practice accepted by both parties" (see Employer Brief, pages 15-16). The Employer has not accepted this practice.

The Employer called attention that the parties included a zipper clause, Article XXXI, in the labor agreement. This provision expressly provides that the labor agreement includes all agreements of the parties. It excludes any claims not expressly included in the labor agreement. Thus, the Employer's position is that Article XXXI prohibits the Union from asserting practices not expressly included in the agreement (see pages 3-4 of this Award for Article XXXI; see also

Employer Brief, page 17).

The Employer called attention that two previous Court Officers were removed from this assignment and no grievances were filed (Employer Brief, page 11). It emphasized that the judges must have confidence in the Court Officer. It further noted that no bias by the judges against the grievant was alleged or demonstrated (Employer Brief, page 18).

In summary, it is the position of the Employer that it did not violate the labor agreement by not assigning the grievant to the position of Court Officer. Accordingly, it requested that the grievance be denied.

# OPINION AND AWARD

According to the testimony, the position of a full time Court Officer was created in the mid-1990s (Union Brief, page 4). The current labor contract became effective January 1, 1999. It was not known how many new agreements were negotiated prior to the current agreement. The point to be made is that the current contract is silent as to the position of the Court Officer and the selection process for this position. If the parties wanted to include a contractual provision on the Court Office and the selection process, they had the opportunity to do so in their negotiations. There is nothing in the record to indicate that the parties even discussed such additions to the labor agreement in the most recent negotiations or in prior negotiations.

In light of the above, it is difficult for this Arbitrator to understand the Union's charge that the Employer is trying to get something in the instant arbitration proceeding that it could not get in contract negotiations.

The record is clear that he judges do not have the authority to hire Court Officers. The Sheriff has that responsibility. The Sheriff, pursuant to Article IV, does have the right to assign employees to the position of Court Officer (see page 3 of this Award for Article IV, Management Rights).

The assignment of the Court Officer in the instant grievant was based on the recommendation of Judge Fischer and the other judges. It was not done arbitrarily. The Court Officer performs duties in the judges courtrooms. It was noted that Court Officers could be removed from that position at the request of the judges. This raises an interesting question. What if the Court Officer wanted to challenge the judges' request to remove him/her against whom does the deputy officer file a grievance?

This Arbitrator takes note that Deputy Nevins, serving as Court Officer was removed from the position due to performance and misconduct issues (see Union Brief, page 5). Deputy Nevins did not file a grievance. If he had, against whom was the grievance filed?

It is apparent to this Arbitrator that Deputy Sue Del Cotto was acceptable to the judges regardless of her seniority.

No job description of the Court Officer was introduced at the arbitration hearing. Court Officer Del Cotto gave her version of the Court Officer's job duties. It is therefore difficult for this Arbitrator to accept the Union's contention that some of the job duties of the School Liaison Officer were similar to some of the job duties of the Court Officer (see Union Brief, page 11).

It is common knowledge that the courts deal with situations involving murders, rapes, husband beating wives, arson, armed robbery, a far different cliental and situations than those of the School Liaison Officer.

It is apparent to this Arbitrator that the job duties of the Court Officer is very different from a deputy on road patrol. The Court Officer is assigned to work in the courtroom under the supervision of the judges and not the Sheriff. Judge Fischer testified that he and other judges preferred Deputy DeMaagd rather than the grievant.

The deputy now assigned to the position of Court Officer works for another identity, the courts. Since there is no specific provision in the labor agreement dealing with the selection of the Court Officer, common sense must dictate. It does not make sense to this Arbitrator to assign a deputy to the position of Court Officer who the judges do not want. It appears to this Arbitrator that the Court Officer serves at the pleasure of the judges.

The Union cited Article IX, Section 3, Seniority, which reads "Seniority shall apply to all cases of promotion to sergeant or increases or decreases of forces provided the employees under consideration have the skill and ability to perform the work (see page 3 of this Award). Thus, the questions is raised whether the new position of the Court Officer represents an increase in the number of members in the bargaining unit. The grievant, in his grievance sought to be granted the position of Court Officer effective January 1, 2002. The grievance was filed on December 10, 2001 (see Joint Exhibit #2). A close examination of seniority lists (Union Exhibits #6 and #7) indicates two new deputies were hired in 2002; Solomon (seniority date of February 9, 2002) and Stevens (seniority date of July 13, 2002). It thus appears that at the time the grievant had applied for the position of Court Officer, that was no increase in the number of deputies in the bargaining unit.

Article IX Section 3 states "in determining the skill and ability, the Employer shall have the right to consider the following factors: a) ability to perform the work; b) physical fitness; c)

prior satisfactory results; and, d) test results (note: this factor does not apply in the instant grievance). Judge Fischer did not give any specific reason or reasons for selecting Deputy DeMaagd. It is not clear to this Arbitrator the meaning of "prior satisfactory results".

It appears to this Arbitrator that his provision of the labor agreement (Article IX, Section 3) is not applicable to the assignment of the Court Officer. The acceptance of the deputy by the judges to be Court Officer is an important factor. This Arbitrator doubts that the Sheriff can force the judges to accept a deputy to be Court Officer if the judges do not want that individual to be the Court Officer.

This Arbitrator takes note of the Employer's position on the inclusion of Article XXXI, the zipper clause, in the labor agreement. The zipper clause excludes any claims not expressly included in the labor agreement, e.g., an alleged past practice. (See pages 3-4 of this Award for this provision).

From the testimony given, the exhibits introduced, the post hearing briefs filed, it is the opinion that the Employer did not violate the labor agreement by not assigning the grievant, Darin Leaf, to the position of Court Officer. The Employer pursuant to Article IV of the labor agreement has the right to assign members of the bargaining unit. In the opinion of this Arbitrator, the right to assign an officer to the position of Court Officer is a qualified right. The applicant must be acceptable to the judges and can be removed if not performing satisfactorily or for other compelling reasons.

# AWARD

The grievance is denied and therefore dismissed.

Daniel H. Kruger
Arbitrator

November 18, 2002