UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIN LEAF,

        Plaintiff,

v.

File No. 1:03-CV-226

HON. ROBERT HOLMES BELL

SHERIFF STEPHEN DeBOER, individually
and in his official capacity, and BARRY
COUNTY,

        Defendants.

_____/

## **O P I N I O N**

      This is a First Amendment retaliation claim brought pursuant to 42 U.S.C. § 1983. Defendants have filed a motion for summary judgment. For the reasons that follow the motion will be granted.

### **I.**

      Plaintiff Darrin Leaf has been a deputy in the Barry County Sheriff's Department since 1989. During his first 9 years with the department he was assigned to night road patrol. In 1998, at Plaintiff's request, Barry County Sheriff Stephen DeBoer assigned Plaintiff to a newly created position as a school liaison officer. The following year Plaintiff circulated a petition in favor of proposed legislation liberalizing the carrying concealed weapons ("CCW") law and began teaching a gun safety class with Dave Stevens, the president of the local chapter of the National Rifle Association ("NRA"). (Leaf dep. at 100). In 2001, the

Sheriff reassigned Plaintiff to night road patrol. In 2002 the Sheriff denied Plaintiff's application for assignment to a vacant court officer position.

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 against Sheriff DeBoer and Barry County alleging First Amendment retaliation. Plaintiff contends that the Sheriff reassigned Plaintiff to road patrol and denied him the court officer position in retaliation for Plaintiff's expression of an opposing viewpoint on the proposed concealed weapons legislation and for his association with Dave Stevens. Defendants have filed a motion for summary judgment.

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

"On summary judgment, all reasonable inferences drawn from the evidence must be viewed in the light most favorable to the parties opposing the motion." *Hanover Ins. Co. v.*

*American Engineering Co.*, 33 F.3d 727, 730 (6th Cir. 1994) (citing *Matsushita*, 475 U.S. at 586-88). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id. See generally, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

In order to prove his claim of retaliation for speech protected under the First Amendment, Plaintiff must point to evidence sufficient to establish the following three elements:

> 1) the plaintiff engaged in constitutionally protected speech; 2) the plaintiff was subjected to adverse action or was deprived of some benefit, and 3) the protected speech was a "substantial" or a "motivating factor" in the adverse action.

*Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003) (quoting *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 897 (6th Cir. 2001)). "More simply framed, the issue is whether the adverse action taken against plaintiffs by defendants was motivated in substantial part by the protected activity of the plaintiffs." *Mattox v. City of Forest Park*, 183 F.3d 515, 520-521 (6th Cir. 1999).

**A. Protected Activity**

Defendants contend that Plaintiff cannot meet the first element of his First Amendment retaliation claim because he did not engage in protected activity. According to

3

Defendants, none of the three activities Plaintiff engaged in – teaching a CCW class, associating with the president of the local NRA, and circulating a petition in support of the new CCW law – were protected activities.

Plaintiff contends that he is not claiming protection for these individual activities. Instead, Plaintiff has focused on these activities as arenas where he expressed his support of the CCW law and his position on gun control and where the Sheriff became aware of Plaintiff's political views.

Although the line between what is and what is not protected speech is not always clear, speech that touches upon matters of public concern is clearly within the protection of the First Amendment. *See Connick v. Myers*, 461 U.S. 138, 147 (1983). "A public employee's speech that relates 'to any matter of political, social or other concern to the community [at large]' is properly considered speech on a matter of public concern." *Leary*, 349 F.3d at 899 (quoting *Connick*, 461 U.S. at 146). According to the Sixth Circuit, "[t]he debate over the propriety of gun control legislation is, obviously, a matter of public concern." *Thomas v. Whalen*, 51 F.3d 1285, 1290 (6th Cir. 1995). Accordingly, there is no question that Plaintiff's expression of his views on gun control legislation are protected by the First Amendment. Of course, there may be limits on his expression of those views. Although "public employees enjoy First Amendment freedoms of political belief and association, . . . if the exercise of those rights interferes with the discharge of public duties, then the rights

may have to yield to the government's interest in maintaining effectiveness and efficiency." *Hager v. Pike County Bd. of Educ.*, 286 F.3d 366, 371 (6th Cir. 2002).

Plaintiff recognizes that the Sheriff may be required to place limits on his employees' exercise of their First Amendment freedoms where the exercise of those rights interferes with the duties of the Sheriff's office. In this case Plaintiff does not claim that the Sheriff placed improper restrictions on his First Amendment activities. He does not challenge the Sheriff's authority to preclude him from circulating a petition at work. Neither does he challenge the Sheriff's authority to request assurances that Plaintiff's CCW classes were not exposing the Sheriff's Department to liability. Neither does he assert that the Sheriff prevented him from associating with Dave Stevens. Plaintiff's only contention is that the Sheriff retaliated against him for his political beliefs, activities, and associations in a manner that would chill his exercise of his First Amendment rights.

This Court is satisfied that Plaintiff has pointed to evidence sufficient to establish that he engaged in First Amendment protected activity. Accordingly, the Court is satisfied that he has met the first element of his First Amendment retaliation claim.

## B. Adverse Action

Defendants contend that Plaintiff cannot meet the second element of his First Amendment retaliation claim because he cannot show that he suffered a materially adverse change in the terms and conditions of his employment. In support of this position Defendants rely on a line of case law developed in the context of Title VII discrimination

claims. The Sixth Circuit has held that "[c]ommon to both the employment discrimination and retaliation claims is a showing of an adverse employment action, which is defined as a 'materially adverse change in the terms and conditions of [plaintiff's] employment.'" *Smith v. City of Salem*, 369 F.3d 912, 922 (6th Cir. 2004) (quoting *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999)). "A 'mere inconvenience or an alteration of job responsibilities' or a 'bruised ego' is not enough to constitute an adverse employment action." *White v. Burlington Northern & Santa Fe Ry.*, 364 F.3d 789, 797 (6th Cir. 2004) (quoting *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)). "Examples of adverse employment actions include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, suspensions, and other indices unique to a particular situation." *Smith*, 369 F.3d at 922. The Sixth Circuit has held that a lateral transfer only constitutes adverse employment action "if the conditions of the transfer would have been objectively intolerable to a reasonable person, thereby amounting to a 'constructive discharge.'" *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001) (quoting *Darnell v. Campbell County Fiscal Court*, No. 90-5453, 1991 U.S. App. LEXIS 1755 at *8 (6th Cir. Feb. 1, 1991) (unpublished)).

Defendants contend that Plaintiff has not shown a materially adverse employment action under the standards articulated above because he was reassigned to a job he held for 9 years, and he suffered no loss in pay or benefits. According to Defendants, this lateral transfer cannot be considered a constructive discharge.

Upon review of the case law, this Court concludes that the Sixth Circuit does not apply the same standard of adverse action that is employed in Title VII retaliation claims to First Amendment retaliation claims. In First Amendment retaliation claims the courts apply a less rigorous standard of adverse action. In order to satisfy the second element of a First Amendment retaliation claim, all a plaintiff must show is that he "was subjected to adverse action or was deprived of some benefit." *Leary*, 349 F.3d at 897. Other courts have held that a plaintiff merely needs to show an adverse consequence in his job "that would likely chill a person of ordinary firmness from continuing to engage in that activity." *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) (holding that for purposes of First Amendment retaliation claim, adverse action is one that would "deter a person of ordinary firmness" from the exercise of the right at stake). The Sixth Circuit has noted that for purposes of First Amendment retaliation claims, "even practices that only potentially threaten political association are highly suspect." *Hager*, 286 F.3d at 371 (quoting *McCloud v. Testa*, 97 F.3d 1536, 1552 (6th Cir. 1996)).

Plaintiff has presented some evidence that being transferred from the school liaison officer position to road patrol and not being reassigned to the court officer position negatively impacted his employment in a significant manner. Plaintiff has presented evidence that morale among the officers on night road patrol is low, that the paperwork is extensive, that the work with substance abusers is difficult, and that the schedule limits his time with his family. (Leaf Aff. ¶ 4). Plaintiff has presented evidence that as school liaison

7

officer he worked with people who had a better attitude, he was able to work during the day, he had less paperwork, and he was able to work in a less stressful environment. (Leaf Aff. ¶ 3). The court officer position would similarly involve less stress, less paperwork, and more convenient overtime. (Leaf Aff. ¶ 5).

In *Leary*, the Sixth Circuit stated that "involuntary transfer from one job to another is action that 'would likely chill a person of ordinary firmness from continuing to engage in that constitutionally protected activity.'" 349 F.3d at 901 (citing *Bloch*, 156 F.3d at 679). *Leary* involved the transfer of elementary teachers. This Court is not convinced that a transfer within a police force would have the same adverse effect as a transfer within a school system. Unlike teachers, deputies perform many different kinds of jobs at the direction of the sheriff. The Michigan legislature has given sheriffs broad powers to assign deputy sheriffs: "Each sheriff may appoint 1 or more deputy sheriffs at the sheriff's pleasure, and may revoke those appointments at any time." M.C.L. § 51.70. The Collective Bargaining Agreement ("CBA") that governs Plaintiff's employment gives the Sheriff "the right to direct, hire, promote, transfer, assign and retain employees in positions within the Sheriff's Department." (Def. Ex. 3).

Although Plaintiff contends that he earned less overtime on night road patrol than he did as a school liaison officer, he has not supported his conclusory statement with any evidence and his conclusion is refuted by the affidavit of Debbie Smith, Barry County Clerk, who is in charge of overseeing and maintaining the time and payroll records for Barry County

employees and the affidavit of Sheriff DeBoer who keeps records of compensation time. (Smith Aff. ¶¶ 2 & 3; DeBoer Aff. ¶ 4).

Given the Sheriff's wide-ranging power in matters of job assignments, the fact that Plaintiff was returned to a position he held for 9 years, and the lack of evidence of any loss of compensation, a lateral transfer within a police force would not likely have the same chilling effect as a transfer within a school system. Nevertheless, viewing the evidence in the light most favorable to Plaintiff and drawing all inferences in Plaintiff's benefit the Court will assume, for purposes of this motion, that there is at least an issue of fact as to whether Plaintiff's transfer to road patrol and the denial of his request for reassignment to the court officer position were adverse actions "that would likely chill a person of ordinary firmness from continuing to engage in that activity." *Bloch*, 156 F.3d at 678.

**C. Causal Connection**

The last element Plaintiff must prove in order to make out a First Amendment retaliation claim is that his protected speech was a "substantial" or a "motivating factor" in the adverse action. *Leary*, 349 F.3d at 897. "A causal connection may be shown by direct evidence or by knowledge of the complaints on the part of the employer coupled with a closeness in time sufficient to create an inference of causation." *Barrett v. Lucent Techs*, No. 00-4458, 2002 WL 1272116, at *4 (6th Cir. June 6, 2002) (citing *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999)).

Plaintiff contends that he was punished because of his beliefs about gun laws, his support for the CCW law, and his activities and associations which evidenced those beliefs. According to Plaintiff, that evidence establishes a causal link between these activities and his work assignments because he worked without incident for 10 years and it was only when he began evidencing his support for the CCW that the Sheriff "began calling Leaf into his office more and more" and "riding his back" with concerns about his teaching classes and his association with the local NRA president. (Pl. Br. at 15 & 18).

Plaintiff overstates the facts in an attempt to create a causal connection between his political beliefs and his work assignments. The evidence shows that the Sheriff called Plaintiff into the office twice in 1999, once to tell him to stop circulating a petition during work (Leaf dep. at 98-99), and once to ask him how Dave Stevens obtained the information about the petition that was printed in the newspaper. (Leaf dep. at 99-100). At the first meeting the Sheriff told Plaintiff that he may have received some poor advice from the people he was associating with. The Sheriff admits that he was referring to Dave Stevens. (DeBoer dep. at 35).

Plaintiff does not quarrel with the reasonableness of the Sheriff's request that a public employee not circulate political petitions during work hours. Neither does he quarrel with the Sheriff's statement that Dave Stevens had given him bad advice when he suggested that Plaintiff circulate the petition while he was on duty. (Leaf dep. at 97-99). Neither does he

10

quarrel with the Sheriff's concern about news coverage regarding his officers' support for a political issue that was closely related to their public employment. (Leaf dep. at 99, 101).

Plaintiff has not come forward with evidence of any other noteworthy meetings with the Sheriff until March 9, 2001, when the Sheriff expressed his concern that Plaintiff might be exposing the county to liability by teaching about the legal aspects of carrying a concealed weapon while being employed as a deputy. (DeBoer dep. at 42-43). The Sheriff had recently been sued by Dave Stevens for denying him a permit to carry a concealed weapon. (Def. Ex. 5; Leaf dep. at 133). The Sheriff expressed concern about the company Plaintiff was keeping outside of work. Plaintiff understood he was referring to Dave Stevens and Plaintiff told the Sheriff that he had separated himself from that company. (Leaf dep. at 62). After the meeting Plaintiff sought legal advice on the liability issue from the county prosecutor. The prosecutor called the Sheriff complaining that Plaintiff had asked him for legal advice on something than had nothing to do with law enforcement. (DeBoer dep. at 46). The Sheriff told Plaintiff that what he had done was inappropriate and that he should not do it again. (DeBoer dep. at 46). Plaintiff subsequently brought in proof of his liability insurance and that satisfied the Sheriff's liability concern. (Leaf dep. at 63; DeBoer dep. at 43). The Sheriff never denied Plaintiff the right to continue teaching the gun classes and Plaintiff has not come forward with evidence to suggest that the Sheriff's liability concerns were not legitimate.

Although Plaintiff has come forward with evidence that he and the Sheriff were on opposite sides of the CCW issue, he has not come forward with any direct evidence that the Sheriff took any actions against Plaintiff because of their diverse political views. There is no evidence that the Sheriff made any comments to Plaintiff or to anyone else that would tend to show that the Sheriff wanted to punish Plaintiff for his political views on gun control. The Sheriff never told Plaintiff that he could not teach the CCW classes. (Leaf dep. at 64, 73). The Sheriff never denied Plaintiff permission to engage in secondary employment. (Leaf dep. at 47-48). The Sheriff never told Plaintiff that he would be removed from the school liaison position if he continued teaching the CCW gun safety classes, if he continued to associate with Dave Stevens, or because he had circulated a petition in the department for approval of the CCW legislation. (Leaf dep. at 103). Plaintiff was not the only Barry County deputy who supported the CCW law. Plaintiff testified that he told Dave Stevens that 95% of the deputies had signed the petition in support of the law. (Leaf dep. at 99).

Although Plaintiff has failed to come forward with direct evidence of a causal link between the Plaintiff's articulation of his beliefs with respect to gun control and any adverse action, proximity in time may give rise to an inference of a causal relationship between engaging in a protected activity and an adverse action. However, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark County Sch. Dist. v.*

*Breeden*, 532 U.S. 268, 273 (2001). In *Hafford v. Seidner*, 183 F.3d 506 (6th Cir. 1999), the plaintiff was disciplined two to five months after he filed protected discrimination claims. The Sixth Circuit held that an inference of causal connection based on temporal proximity alone was "tenuous" and that absent additional evidence, "this loose temporal proximity is insufficient to create a triable issue." *Id.* at 515. *See also Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (discharge four months after filing discrimination claim insufficient to support an inference of retaliation); *Barrett v. Lucent Techs*, No. 00-4458, 2002 WL 1272116, at *6 (6th Cir. June 6, 2002) (holding that without additional evidence, two and one-half months is insufficient to create a triable issue of causation).

Plaintiff has not shown a proximity in time between his protected activities and any adverse action. It is undisputed that the Sheriff knew about Plaintiff's political views on gun control at least as early as 1999 when Plaintiff circulated the petition in support of the new CCW law. The adverse work assignments Plaintiff complains of occurred in August 2001 and early 2002, some two years or more after his political position became known. Even if the time period is measured from Plaintiff's March 2001 meeting with the Sheriff, another 5 months elapsed before Plaintiff was removed from the school liaison officer position. There simply is no temporal proximity that would be sufficient to create a triable issue of causation.

Plaintiff attempts to close the temporal gap by referring to the fact that he was denied a position on the gun board in August 2001. It is undisputed, however, that the vacancy was

13

the result of the county prosecutor's decision not to be on the gun board. The Sheriff does not decide who fills the prosecutor's position on the gun board. M.C.L. § 28.425a(1). Moreover, the Sheriff opposed filling that vacancy with a member of the Sheriff's Department because the Sheriff's Department was already represented on the Board. (DeBoer dep. at 49-50).

Because Plaintiff has failed to come forward with facts from which a reasonable jury could infer causation between his First Amendment speech and his work assignments, Plaintiff cannot make out a prima facie case of First Amendment retaliation. The Court's analysis could stop here. However, even if the Court were to consider the issue of whether the Sheriff's stated reasons for Plaintiff's work assignments were pretextual, the evidence would require the Court to find in the Sheriff's favor.

> To raise a genuine issue of material fact on the validity of an employer's explanation for an adverse job action, the plaintiff must show, again by a preponderance of the evidence, either (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action.

*Kocsis v. Multi-Care Management, Inc.* 97 F.3d 876, 884 (6th Cir. 1996) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

The Sheriff testified that Plaintiff was removed from the school liaison position because he wanted someone else in that position. (DeBoer dep. at 22). He testified that Plaintiff turned in reports late and had not acted on the Sheriff's request that he involve more children in summer programs. (DeBoer dep. at 18-23). Plaintiff contends that these reasons

14

are pretextual because the Sheriff's stated reasons have changed over time. At the meeting on August 16, 2001, the Sheriff told him he was being removed because Plaintiff had been in that position for three years and it was time to give it to someone else. When Plaintiff challenged him the Sheriff stated that it was because "he said so" and then because Plaintiff was "always late." (Pl. Ex. F). Plaintiff's evidence is not inconsistent with the Sheriff's testimony and is not sufficient to raise an issue of fact as to whether the Sheriff in fact removed him from the school liaison position because of his political beliefs and associations.

Plaintiff has even less evidence to challenge the Sheriff's testimony with regard to why Plaintiff was not selected for the court officer position. The Sheriff testified that he brought Chief Judge Fisher the names of three applicants for the court officer position, including Plaintiff's. (DeBoer dep. at 58). The court officer maintains security for the Barry County Courthouse, escorts prisoners into the courtroom, and has some bailiff duties. Because the court officer works very closely with the judges, the Sheriff testified that he would not put someone in that position if the judge did not want him there. (DeBoer dep. at 57). Judge Fisher consulted with his two judicial colleagues and three court administrators and advised the Sheriff that they preferred Dave DeMaagd. (DeBoer dep. at 57-58; Fisher Aff. ¶¶ 4-5).

Plaintiff claims that this explanation is pretextual because historically all of the officers who had filled the court officer position had been assigned according to seniority.

He contends that of the three applicants, he was the most senior, and therefore should have been assigned to the court officer position.

Although Plaintiff believes that the choice had been made solely on the basis of seniority in the past, (Leaf dep. at 109), he has not come forward with any evidence to refute the Sheriff's testimony that he always consulted with the judge as to who would be appointed as court officer. (DeBoer dep. at 57). Moreover, this issue has been grieved and the Arbitrator concluded that the method of selection did not violate either the seniority provisions of the CBA or past practice. (Def. Ex. at 2, 14).

Viewing the facts in the light most favorable to Plaintiff, this Court is satisfied that no reasonable inference can be drawn that either Plaintiff's viewpoint on carrying concealed weapons or his association with Dave Stevens motivated in substantial part the Sheriff's decision not to keep Plaintiff in the school liaison position and/or his decision not to place him in the court officer position.

## IV.

Plaintiff filed his complaint against both Sheriff DeBoer and Barry County. Plaintiff has not responded to Defendants' motion for summary judgment as to the county in his brief or during oral argument. It is clear from a review of Plaintiff's complaint that his claims against the county are derivative of his claims against the Sheriff. Because this Court has already determined that the Sheriff should be dismissed from this action, and because Plaintiff does not have an independent claim against the county, the county will be dismissed

as well. *See Wrzesinksi v. Danielson*, 231 F. Supp.2d 611, 623 (W.D. Mich. 2002) (Quist, J.).

## V.

For the reasons stated herein, Defendants' motion for summary judgment will be granted and Plaintiff's complaint will be dismissed in its entirety.

An order and judgment consistent with this opinion will be entered.


Date:     July 12, 2004                    /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           CHIEF UNITED STATES DISTRICT JUDGE